## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH GAIAMBRONE,

        Plaintiff,

        v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.

CIVIL ACTION NO. 3:22-cv-00489

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

In this matter, the plaintiff, Joseph Gaiambrone, seeks judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

### I. BACKGROUND

On October 31, 2016, Gaiambrone[1] protectively filed a claim for

---

[1] The claimant is a transgender person who identifies as a woman and prefers to use the first name Mary. Although the caption uses the plaintiff's legal name, we use female pronouns throughout this opinion.

disability insurance benefits and supplemental security income, asserting a disability onset date of April 18, 2015. Gaiambrone's claims were initially denied by state agency reviewers on January 30, 2017. The plaintiff then requested an administrative hearing.

A hearing was held on July 31, 2018, before an administrative law judge ("ALJ") Theresa A. Hardiman. In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Terry P. Leslie. The plaintiff was represented by counsel at the hearing.

On May 8, 2019, ALJ Hardiman denied Gaiambrone's application for benefits in a written decision. The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on May 4, 2020. Gaiambrone then timely filed a complaint for judicial review in this court on July 2, 2020.

On May 17, 2021, the court granted an unopposed motion by the Commissioner to remand the case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), and final judgment was entered in that prior action for judicial review.

In the meantime, shortly after the ALJ's May 2019 decision denying her first application, Gaiambrone had filed a second, subsequent

application for disability insurance benefits and supplemental security income, alleging a disability onset date of May 9, 2019—the day after the ALJ decision denying her first application. Her second application was initially denied by state agency reviewers on May 7, 2021, and upon reconsideration on August 23, 2021.

On July 12, 2021, the Appeals Council entered an order vacating the ALJ's May 2019 decision and consolidating the claim files compiled in both administrative proceedings. The matter was then remanded for further proceedings before the same ALJ.

A post-remand hearing was held on October 28, 2021, before the same ALJ. In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Josephine Doherty. The plaintiff was again represented by counsel at this second hearing.

On December 28, 2021, the ALJ denied Gaiambrone's application for benefits in a second written decision. (Tr. 690–707.) The ALJ followed the familiar five-step sequential evaluation process in determining that Gaiambrone was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found

that Gaiambrone had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that, as of June 30, 2016—her date last insured for disability insurance benefits— Gaiambrone had the severe impairments of: bipolar disorder; anxiety disorder; cannabis abuse; and gender identity disorder. After that date, for supplemental security income purposes, Gaiambrone had the severe impairments of: bipolar disorder; major depressive disorder; depressive disorder; generalized anxiety disorder; anxiety disorder; post-traumatic stress disorder; intermittent explosive disorder; and marijuana abuse.

At step three, the ALJ found that Gaiambrone did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In doing so, the ALJ considered Gaiambrone's limitations in four broad functional areas as a result of her mental disorders, finding no more than moderate limitations in any of the four functional areas.[2] *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c)

---

[2] These four areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. The ALJ found Gaiambrone to be mildly limited in her ability to
*(continued on next page)*

(explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). In connection with listing 12.04, the ALJ also considered whether Gaiambrone's mental disorders were "serious and persistent," finding that her impairments had not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of her mental disorders, nor that she had achieved only marginal adjustment as a result. *See generally id.* § 12.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Gaiambrone's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that

---

understand, remember, or apply information and in her ability to adapt or manage herself. The ALJ found her to be moderately limited in her ability to interact with others and in her ability to maintain concentration, persistence or pace.

Gaiambrone had the RFC to perform a full range of work at *all* exertional levels, *see generally* 20 C.F.R. §§ 404.1567, 416.967, with the following nonexertional limitations:

> The claimant is limited to unskilled work activity defined by the Dictionary of Occupational Titles (DOT), that is limited to simple, routine, and repetitive tasks, that is low stress defined as only occasional decision making and only occasional changes in the work setting, with no interaction with the public and only occasional interaction with coworkers and supervisors.

(Tr. 700.)

In making these factual findings regarding Gaiambrone's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how she weighed the various medical opinions in the record. *See generally* 20 C.F.R. §§ 404.1527, 416.927; Soc. Sec. Ruling 96-2p, 1996 WL 374188.

At step four, the ALJ concluded that Gaiambrone had no past relevant work.

At step five, the ALJ concluded that Gaiambrone was capable of

performing other work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Gaiambrone was capable of performing the requirements of representative occupations such as vehicle cleaner (DOT # 919.687-014), janitor (DOT # 381.687-014), or laundry worker (DOT # 361.684-014). Based on this finding, the ALJ concluded that Gaiambrone was not disabled for Social Security purposes.

The plaintiff did not seek further administrative review of her claims by the Appeals Council, making the ALJ's December 2021 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on March 31, 2022. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's

finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Gaiambrone asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ lacked authority to hear the plaintiff's case because she originally had been unconstitutionally appointed by agency staff rather than a department head, and the Acting Commissioner who subsequently ratified her initial appointment lacked authority to do so because she was herself serving in that role in violation of the Federal Vacancies Reform Act and the Appointments Clause of the United States Constitution; (2) the ALJ failed to properly evaluate a medical opinion by an examining psychologist, Kathleen Ledermann, Psy.D.; (3) the ALJ's RFC determination failed to adequately reflect the moderate limitations he had found with respect to Gaiambrone's ability to concentrate, persist, or maintain pace; and (4) the ALJ's RFC determination failed to incorporate

several other mental limitations identified in medical opinions afforded some weight by the ALJ.[3]

## A. The ALJ's Authority to Hear Plaintiff's Case

The plaintiff contends that, by operation of the Federal Vacancies Reform Act and the Appointments Clause of the United States Constitution, the appointment of the ALJ who presided over the administrative adjudication of this case was void, depriving her of any authority to hear and decide the matter and requiring a new hearing before a different, properly appointed ALJ.

Initially, the ALJ who heard this case had been appointed by agency staff through a competitive examination process. In 2018, the Supreme Court held a substantially identical appointment process at another federal agency unconstitutional because the Appointments Clause of the United States Constitution required ALJs to be appointed by the head of an agency. *See generally Lucia v. Sec. & Exch. Comm'n*,

---

[3] The plaintiff's brief articulated three claims of error, one of which was vague and highly generalized: "The ALJ formulated a legally insufficient RFC, in violation of Social Security law and contrary to Third Circuit precedent and case law." Although not clearly articulated by plaintiff's counsel, a close reading of the brief reveals that this highly generalized grievance rests on the specific errors we have articulated above in (2) and (4).

138 S. Ct. 2044 (2018). A few weeks after the *Lucia* decision, the Acting Commissioner of Social Security at the time, Nancy Berryhill, attempted to preemptively address any Appointments Clause issues with respect to Social Security adjudications by ratifying the appointments of all then-current Social Security ALJs. *See Carr v. Saul*, 141 S. Ct. 1352, 1357 (2021).

The plaintiff argues that this ratification by Berryhill was void because Berryhill was no longer authorized to serve as Acting Commissioner. At the time, she had already served more than the statutory limit of 210 days in that role. In support of this argument, the plaintiff relies primarily on the reasoning set forth in a Minnesota federal district court decision, *Brian T.D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022), *rev'd sub nom.*, *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), *petition for cert. filed*, No. 23-173 (U.S. Aug. 24, 2023).

We need not belabor the issue. As the preceding case citation indicates, the *Brian T.D.* decision was reversed on appeal to the Eighth Circuit. Upon consideration of the Eighth Circuit's opinion, we agree and find the argument advanced by the plaintiff here and by the *Brian T.D.*

district court to be meritless.[4] We find that Berryhill was properly serving as Acting Commissioner at the time when she ratified this ALJ's appointment. *See Dahle*, 62 F.4th at 429 ("Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs."). We further note that this same legal argument has been rejected by the only other federal appellate court to consider it. *See Rush v. Kijakazi*, 65 F.4th 114, 124 (4th Cir. 2023) ("Berryhill . . . was properly serving as SSA Acting Commissioner when she ratified the ALJs' appointments."), *petition for cert. filed*, No. 23-243 (U.S. Sept. 14, 2023). Moreover, it has been rejected by this court several times over, and by our sister court as well. *See Drake v. Kijakazi*, Civil No. 1:22-CV-980, 2023 WL 3060811, at *12–*14 (M.D. Pa. Apr. 24, 2023); *Ortiz-Rivera v. Kijakazi*, Civil Action No. 3:21-CV-02134, 2023 WL 25353, at *12–*17 (M.D. Pa. Jan. 3, 2023); *Reddick v. Kijakazi*, Civil Action No. 3:21-CV-01782, 2022 WL 16703903, at *12–*17 (M.D. Pa. Oct. 7, 2022), *report & recommendation adopted by* 2022 WL 16700395 (M.D. Pa. Nov. 3, 2022); *see also Etze v. Kijakazi*, Civil Action No. 22-32, 2023 WL 3689701, at *8–

---

[4] In fairness, none of the decisions cited herein is *binding*, but merely persuasive, and they were all decided after the plaintiff filed her initial brief here. So, while meritless, her argument is not frivolous.

*10 (E.D. Pa. May 26, 2023).

**B. Medical Opinion of Consultative Examining Psychologist**

The plaintiff contends that the ALJ erred in her evaluation of the medical opinions provided by a consultative examining psychologist, Kathleen Ledermann, Psy.D.

An ALJ is required to evaluate every medical opinion in the record, regardless of the source of the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). In determining the appropriate weight to which a non-treating source's medical opinion is entitled, the ALJ must consider the following factors: (1) whether the medical source actually examined the claimant; (2) the degree to which the medical opinion is supported by relevant evidence; (3) the degree to which the medical opinion is consistent with the record as a whole; and (4) the medical source's specialization. *Id.* §§ 404.1527(c)(1) & (3)–(5), 416.927(c)(1) & (3)–(5). In addition, the ALJ must consider any other factors that tend to support or contradict the medical opinion, but only if brought to his or her attention. *See id.* §§ 404.1527(c)(6), 416.927(c)(6).

At the request of state agency reviewers, Dr. Ledermann conducted a mental status evaluation of Gaiambrone on April 19, 2021. In her

evaluation report, Dr. Ledermann noted that Gaiambrone was a 28-year-old transgender-female who uses the pronouns "she" and "her" and prefers to be addressed as "Mary." She noted that Gaiambrone's treating mental health providers had recorded diagnoses of: major depressive disorder, recurrent, anxiety disorder, not otherwise specified, and marijuana abuse. She noted that Gaiambrone reported having been hospitalized more than 50 times for psychiatric reasons, having seen a psychiatrist regularly since age 17, and having first seen a therapist at age 19 or 20, though she was currently on a waitlist for therapy. Gaiambrone reported that she had difficulty falling asleep and with a fluctuating appetite. Gaiambrone acknowledged experiencing severe levels of depression, including thoughts and plans of suicide, but none currently. Gaiambrone reported experiencing panic attacks several times per week, and angry outbursts a couple of times per week. Gaiambrone reported having experienced a traumatic event in the past, and having flashbacks and nightmares weekly, as well as hypervigilance, avoidance behaviors, hyperstartle response, and intrusive thoughts. Gaiambrone also reported experiencing visual hallucinations daily, as well as amplification of smells and sounds. Gaiambrone reported experiencing

paranoia and delusions frequently, and Dr. Ledermann also noted a history of selective memory and concentration difficulties. (Tr. 2486–87.)

On examination, Dr. Ledermann observed that Gaiambrone appeared to be her stated age, she was appropriately dressed, and she had satisfactory hygiene and grooming. Dr. Ledermann observed normal posture and motor behavior, as well as appropriate eye contact. Gaiambrone's speech was fluent with a clear quality of voice, and she exhibited adequate expressive and receptive language ability. With respect to thought processes, Dr. Ledermann observed no evidence of hallucinations, delusions, or paranoia in the evaluation setting. Gaiambrone's affect was appropriate to speech and thought content, though she was very tearful and upset during the evaluation. With respect to mood, Gaiambrone reported to Dr. Ledermann that she felt "not good" that day. Dr. Ledermann observed that Gaiambrone's sensorium was clear and she was oriented to person, place, and time. Dr. Ledermann found mildly impaired attention and concentration, noting that Gaiambrone could do counting and simple calculations, but she made one error with serial 7s. Dr. Ledermann found intact recent and remote memory skills, noting that Gaiambrone could remember 3 out of

3 objects immediately and 3 out of 3 objects after a delay, 7 digits forward, and 3 digits backward. With respect to cognitive functioning, Dr. Ledermann found Gaiambrone to have below average intellectual functioning, with a somewhat limited general fund of information. Gaiambrone's insight and judgment were both found to be poor. (Tr. 2488–89.)

Based on this evaluation, Dr. Ledermann recorded diagnoses of: major depressive disorder, recurrent, severe with psychotic features; generalized anxiety disorder with panic attacks; posttraumatic stress disorder; and intermittent explosive disorder, with a good prognosis, given support. Dr. Ledermann recommended that Gaiambrone continue with her psychiatric treatment, and it was recommended that she also have psychological therapy. Dr. Ledermann further found that Gaiambrone would not be able to manage her own funds "due to her statement to that effect." (Tr. 2489–90.)

Together with her examination report, Dr. Ledermann prepared a checkbox medical source statement of ability to do work-related activities, in which she provided her medical opinion with respect to Gaiambrone's mental functional limitations. In this statement, Dr.

Ledermann found that, due to "concentration difficulty," Gaiambrone had moderate limitations in her ability to understand, remember, and carry out complex instructions and her ability to make judgments on complex work-related decisions, but only mild limitation with respect to her ability to understand, remember, and carry out simple instructions and her ability to make judgments on simple work-related decisions. Dr. Ledermann further found that, due to paranoia, angry outbursts, and delusions, Gaiambrone had  moderate-to-marked limitations in her ability to interact appropriately with the public, with supervisors, and with coworkers. (Tr. 2491–93.)

The ALJ considered Dr. Ledermann's opinion and assigned it "little weight," stating:

> The undersigned gives these opinions [by the consultative examining psychologist] only less weight and finds them less persuasive. The doctor is not a treating source and saw the claimant once. The doctor relied exclusively on the claimant's self-reporting and not upon the review of her longitudinal evidence of record. The doctor supplied a basis for her opinions from the claimant's self-reported subjective complaints and not upon any objective deficits identified in the doctor's report. The doctor's objective findings reported she had no more than mild impairment of her attention and concentration, her memory was intact, and [t]he cognitive function was below average but she offered no testing or records to support that conclusion. The

claimant's though, appearance, sensorium, and orientation were all reported to be normal. As more fully discussed above, the claimant's longitudinal evidence of record reflects normal mental status findings with some variations in mood. As such, the nature and extent of the checked limitations are clearly not well supported or consistent with the doctor's own findings and the longitudinal evidence as a whole and is given little weight and found not to be persuasive.

(Tr. 704 (citations omitted).)

In determining the amount of weight to give Dr. Ledermann's opinion, the ALJ here clearly articulated her consideration of factors (1) and (2), expressly describing Dr. Miller as a "consultative examiner" who "is not a treating source and claimant saw the claimant once." With respect to factors (3) and (4), the ALJ's decision clearly documents her consideration of the opinion's lack of support by medical evidence, and its inconsistency with the record as a whole. There is no apparent indication in the record of Dr. Ledermann's medical specialization beyond psychology. No additional factors appear to have been brought to the ALJ's attention for consideration. We find no error in the ALJ's consideration of Dr. Ledermann's opinion or her assignment of little weight to it.

Gaiambrone argues that the ALJ's assignment of "less" or "little

weight" to Dr. Ledermann's opinion is not supported by substantial evidence because the ALJ's rejection of the opinion was based on its reliance on the plaintiff's "self-reported subjective complaints" as a basis for its findings. But an ALJ may disregard a medical opinion premised on a plaintiff's self-reported symptoms if the ALJ has reason to doubt the plaintiff's credibility. *See Davern v. Comm'r of Soc. Sec.*, 660 Fed. App'x 169, 172 (3d Cir. 2016) (ALJ properly discounted treating physician opinion that substantially relied on the claimant's subjective self-reported symptoms and pain); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'"); *see also Mastro v. Apfel*, 270 F.3d 171, 177–78 (4th Cir. 2001) (ALJ correctly afforded little weight to medical opinion based "largely upon the claimant's self-reported symptoms"); *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995) (ALJ properly discounted medical opinion based on the claimant's own statements about his functional restrictions). In this case, the ALJ considered the plaintiff's subjective statements regarding symptoms and found that her

"statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 701.)

Accordingly, the court finds that there is substantial evidence in the administrative record to support the ALJ's evaluation of the appropriate weight to assign the opinion of the consultative examining psychologist, Dr. Ledermann, and that her determination of the weight given to it was adequately explained and otherwise based upon a correct application of relevant law.

## C. Concentrating, Persisting, or Maintaining Pace

At step three, the ALJ found that Gaiambrone had moderate limitations in the functional area of concentrating, persisting, or maintaining pace. Later, in determining the plaintiff's RFC, the ALJ found that Gaiambrone was capable of performing "simple, routine, and repetitive . . . low stress" tasks. (Tr. 700.)

Citing *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), the plaintiff contends that the ALJ's RFC determination failed to adequately account for Gaiambrone's moderate limitations in concentration, persistence, and pace. The plaintiff appears to suggest that *Ramirez*

established a categorical rule that a claimant with a moderate limitation in concentration, persistence, or pace is incapable of performing work involving even simple tasks.

In *Ramirez*, as the Third Circuit itself emphasized in its opinion, the court's determination that a "simple one or two-step tasks" restriction was not supported by substantial evidence hinged primarily, and expressly, on one factor: the limitation did not adequately reflect the claimant's deficiencies in pace. *Ramirez*, 372 F.3d at 554. Here, however, the record simply does not speak to any need for a similar production-pace restriction. Indeed, the ALJ noted repeatedly that the plaintiff's records reflected normal attention and concentration on examination.

Other decisions by the Third Circuit underscore the fact-driven nature of the *Ramirez* decision. In *McDonald v. Astrue*, 293 Fed. App'x 941 (3d Cir. 2008), the Third Circuit found that a hypothetical involving an individual limited to "simple, routine tasks" adequately portrayed the limitations of a plaintiff who only had "moderate limitations with his ability to maintain concentration, persistence and pace." *Id.* at 946. In *Russo v. Astrue*, 421 Fed. App'x 184 (3d Cir. 2011), the Third Circuit explained that a hypothetical involving an individual who "could

understand, remember, and carry out simple instructions, would have limited contact with the public and coworkers, and would not have a quota to fulfill" accurately conveyed the limitations of a plaintiff who had "moderate difficulties with concentration, persistence, or pace." *Id.* at 192.

Most salient, however, is a more recent and *binding* published decision by the Third Circuit, *Hess v. Commissioner Social Security*, 931 F. 3d 198 (3d Cir. 2019). In *Hess*, the Third Circuit revisited the "simple tasks" issue to clarify its *Ramirez* holding. The plaintiff in *Hess* argued that *Ramirez* imposed a categorical rule that "a limitation to simple instructions and simple work-related decisions does not reflect a claimant's moderate restrictions in concentration, persistence, or pace." *Id.* at 210. The Third Circuit disagreed, explaining that

> *Ramirez* did not hold that there is any categorical prohibition against using a "simple tasks" limitation after an ALJ has found that a claimant "often" faces difficulties in "concentration, persistence, or pace." Rather, a "simple tasks" limitation is acceptable after such a finding, as long as the ALJ offers a valid explanation for it.

*Id.* at 212.[5]

The *Hess* court went on to explain that "[t]he relationship between 'simple tasks' limitations and 'concentration, persistence, or pace' is a close one." *Id.*

> Nevertheless, a "simple tasks" limitation alone does not account for the *extent* of a claimant's difficulties in "concentration, persistence, or pace." Without explanation, such a limitation does not warrant a conclusion about whether a claimant's difficulties in "concentration, persistence, or pace" are so serious that he cannot satisfy the functional requirements of "simple tasks." An explanation is thus important, regardless of the particular scale used for rating "concentration, persistence, or pace." It must be given whether difficulties in that area are said to arise "often" or are called "moderate" in severity.

*Id.* at 213.

Here, the ALJ explained at length and with sound reasoning why Gaiambrone's moderate limitations in concentration, persistence, or pace were not so significant that she was incapable of performing "simple, routine, and repetitive tasks" that were also "low stress." (Tr. 700.) In

---

[5] The "often" terminology used in *Ramirez* reflects the superseded nomenclature of an earlier iteration of agency regulations. In this context, courts have held that the terms "often" and "moderate" are equivalent. *See, e.g.*, *Drelling v. Colvin*, Civil Action No. 14-2211, 2016 WL 245288, at *8 (E.D. Pa. Jan. 20, 2016).

finding at step three that Gaiambrone had moderate limitations in concentration, persistence, or pace, the ALJ noted that:

> The claimant reports concentration problems and the inability to complete tasks. However, she reported that she can go out alone, pay bills, and handle a savings account. The longitudinal mental status examination findings (except for the onetime consultative examination) reflect attention and concentration findings which are generally reported to be normal. The State agency doctors in August 2021, May 2021, and January 2017 all found only moderate limitation in the claimant's ability to concentrate, persist, or maintain pace.

(Tr. 699 (citation omitted).) Prior to step four, in evaluating Gaiambrone's RFC, the ALJ noted that mental health treatment records documented a series of encounters in which Gaiambrone's treating mental health providers repeatedly recorded *normal* mental status findings. (Tr. 701–04.)

We find this explanation by the ALJ to be sufficient. The ALJ's limitation of Gaiambrone's RFC—and the corresponding hypothetical posed to an impartial vocational expert—to "simple, routine tasks, and repetitive tasks[] that would be low-stress" (Tr. 730)—was supported by a valid explanation.

Accordingly, we find the ALJ's evaluation of the plaintiff's moderate

limitations in concentrating, persisting, or maintaining pace in connection with her determination of the plaintiff's RFC is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### D. Other Mental Functional Limitations

The plaintiff argues that the ALJ erred in failing to incorporate several other mental functional limitations into her RFC determination. The plaintiff identifies thirteen specific functional limitations mentioned in the medical opinions by state agency psychological consultants and the consultative examining psychologist, contending that each should have been expressly included among the nonexertional limitations incorporated into the ALJ's RFC determination.

It is well established that it is "[t]he ALJ—not treating or examining physicians or State agency consultants—[who] must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When making the ultimate RFC and disability determinations, an ALJ is not required to supplement his or her determinations with a "comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would

probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Instead, an ALJ must merely explain his or her analysis of the evidence, while simultaneously not ignoring an entire line of evidence presented. *See Cosby v. Comm'r of Soc. Sec.*, 231 Fed. App'x 140, 146 (3d Cir. 2007). The ALJ is not required to adopt all limitations assigned by a medical opinion, even if the ALJ affords that medical opinion significant weight. *See Wilkinson v. Comm'r of Soc. Sec.*, 558 Fed. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight.").

Here, the ALJ afforded "some weight" to the medical opinions of the three non-examining state agency psychological consultants contained in the prior administrative findings and "little weight" to the medical opinion of the consultative examining psychologist, suggesting even less deference is owed to the specific findings set forth in these opinions. Some, but not all, of the mental functional limitations articulated in their opinions were incorporated into the ALJ's RFC determination. We find no error here. *Cf. Pascarello v. Berryhill*, Civil Action No. 18-3406, 2019 WL 2288233, at *8 (E.D. Pa. May 28, 2019) (affirming ALJ decision that

omitted particular restrictions set out in medical opinion that had been afforded only partial weight).

Accordingly, we find the ALJ's evaluation of the plaintiff's other mental functional limitations in in connection with her determination of the plaintiff's RFC is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### III. CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Gaiambrone was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: September 29, 2023          ***s/Joseph F. Saporito, Jr.***
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge